IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ASI BUSINESS SOLUTIONS, INC., | : | CIVIL ACTION |
| | : | NO. 16-5514 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| OTSUKA AMERICA PHARMACEUTICAL, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    February 10, 2017

          Before the Court is the plaintiff's motion for a
preliminary injunction (ECF No. 3). This motion seeks to enjoin
the defendant from, among other things, using or disclosing the
plaintiff's software, which the defendant had previously
licensed from the plaintiff. For the reasons that follow, the
Court will deny the motion for a preliminary injunction without
prejudice to the plaintiff proceeding on the underlying
complaint or seeking permanent injunctive relief, to the extent
any such relief is warranted.[1]

_____

[1]      The standard for granting a preliminary injunction is
different from the standard for granting a permanent injunction.
See ACLU v. Black Horse Pike Reg'l Bd. of Educ., 84 F.3d 1471,
1477 (3d Cir. 1996) (contrasting "likelihood" of succeeding on
the merits with actually succeeding on the merits); see also
CIBA-GEIGY Corp. v. Bolar Pharm. Co., Inc., 747 F.2d 844, 850
(3d Cir. 1984) ("In deciding whether a permanent injunction

## I.    FACTUAL BACKGROUND

The plaintiff in this case is ASI Business Solutions, Inc. ("Plaintiff" or "ASI"), a Pennsylvania corporation that develops, licenses, and implements relationship management software, and provides professional services related to such software. Compl. ¶¶ 2, 6, ECF No. 1. The defendant is Otsuka America Pharmaceutical, Inc. ("Defendant" or "Otsuka"), a Maryland corporation with its principal place of business in Princeton, New Jersey, that researches and develops clinical healthcare products including new treatments and indications focusing on neuroscience, oncology, hospital, and medical device areas for diseases. Id. at ¶¶ 3, 12.

ASI claims that its various software products constitute valuable trade secrets that ASI licenses to numerous companies for millions of dollars per year. Id. at ¶ 9. ASI takes extensive measures to protect this valuable software and guard its confidentiality, including "licensing its software only to those companies that agree to maintain the confidentiality of ASI's software, not to disclose ASI's software to third parties without ASI's prior, written permission, and to destroy or remove its software after the termination of the license agreement." Id. at ¶ 11.

---

should be issued, the court must determine if the plaintiff has actually succeeded on the merits (i.e. met its burden of proof). If so, the court must then consider the appropriate remedy.").

On November 1, 2010, the parties entered into a Master Subscription Agreement (the "Agreement"), under which ASI agreed to license subscription services on a non-exclusive, right-to-use basis at Otsuka's identified facilities. Id. at ¶¶ 14, 16. The Agreement allowed Otsuka to license ASI's products and services from January 1, 2012, to January 31, 2017. Id. at ¶ 21. Pursuant to the Agreement, Otsuka installed ASI software on numerous computers and devices accessible by Otsuka employees. Id. at ¶ 22. The Agreement prohibited Otsuka from copying, relocating, moving, sublicensing, renting, timesharing, loaning, leasing, or distributing the software products it obtained under the Agreement. Id. at ¶ 17. It further prohibited Otsuka from operating the subscription service for the benefit of any third party without ASI's prior written consent, and it made any attempt to do so void. Id. at ¶ 18.

In December 2015, Otsuka opted to terminate the Agreement early, and it paid ASI an early termination fee of over two million dollars. Id. at ¶ 23. Subsequently, Otsuka hired Genpact, a third-party software developer, to develop an alternative to ASI's software and related services. Id. at ¶ 24. ASI and Otsuka originally agreed on an early termination date of June 4, 2016, but when Otsuka's alternative software was not ready by that time, Otsuka paid ASI $175,000 to extend the early termination date to July 4, 2016. Id. at ¶ 25. Otsuka then paid

3

ASI another $175,000 to extend that date to August 4, 2016, and an additional $175,000 to extend that date to September 4, 2016. Id.

Upon termination of the Agreement on September 4, 2016, Otsuka was required to cease using and accessing ASI's subscription services, including ASI's trade secret software. Id. at ¶ 26. ASI claims that Otsuka was further required to promptly return to ASI all of ASI's confidential information and other materials, including preliminary outlines, notes, sketches, plans, unpublished memoranda, and other documents. Id. at ¶ 27. Alternatively, Otsuka could have destroyed all ASI confidential information and delivered a written and signed statement to ASI certifying the destruction. Id. In ASI's view, Otsuka has failed to comply with these unambiguous provisions of the Agreement. Id. at ¶ 28.

On September 26, 2016, Otsuka certified to ASI that it had "ceased using and accessing [ASI's] Subscription Service" and had "used reasonable business efforts to confirm removal of any ASI Confidential Information, including Intellectual Property." Id. at ¶ 32. ASI claims that this certification does not fulfill Otsuka's obligations under the Agreement, and further that Otsuka is a sophisticated corporation that has the necessary expertise to remove and permanently destroy all ASI

4

confidential information from Otsuka's computer systems. Id. at ¶¶ 33-34.

ASI claims that Otsuka continued to use ASI's trade secret software to make system-access requests to ASI even after September 26, 2016. Id. at ¶ 35. On October 3, 2016, ASI's counsel wrote to Otsuka, reiterating the importance of returning or destroying ASI's confidential information and requesting that Otsuka comply with the relevant provision of the Agreement. Id. at ¶ 38. Otsuka never responded to this letter, and as of the date the Complaint was filed (i.e., October 21, 2016), Otsuka had failed to certify that it has removed ASI Confidential Information from all of its computers and devices.[2] Id. at ¶ 39.

Based on the foregoing events, ASI claims that it is entitled to relief under the terms of the Agreement, the federal Defend Trade Secrets Act, and the Pennsylvania Uniform Trade Secrets Act. Id. at ¶ 46. ASI further claims that it will sustain irreparable harm if no injunctive relief is granted, but Otsuka will sustain no harm if compelled to comply with the Agreement and prohibited from continuing to use and disclose ASI

---

[2]     ASI notes that Otsuka once previously granted a third-party software developer access to ASI's trade secret software, in violation of the authorization that Ostuka received from ASI. Id. at ¶ 41. The third-party software developer involved in that incident, known as Mu Sigma, is located in India and, "on multiple occasions," attempted to access ASI's system even though ASI did not grant Otsuka permission for that type of access. Id.

5

confidential information. Id. at ¶ 47. ASI initially sought the

following preliminary and permanent injunctive relief[3]:

> 1.   Require Otsuka to return or destroy and certify
> the destruction of all ASI Confidential Information in
> accordance with the terms of the Agreement;
>
> 2.   Prohibit Otsuka from using any ASI Confidential
> Information;
>
> 3.   Require Otsuka to disclose all third parties to
> whom it disclosed ASI Confidential Information;
>
> 4.   Require all third parties that have obtained ASI
> Confidential Information from Otsuka to immediately
> return all such confidential information to ASI;
>
> 5.   Prohibit Otsuka from using any software developed
> by Genpact or any other software developers based on
> unauthorized use and disclosure of ASI Confidential
> Information; and
>
> 6.   Award ASI costs and attorneys' fees as permitted
> by applicable law.

Compl. 10-11; see also Pl.'s Mot. TRO & Prelim. Inj. at 1-2, ECF

No. 3.


## II.   PROCEDURAL HISTORY

ASI filed its complaint concurrently with a motion for

a temporary restraining order ("TRO") and preliminary injunction

on Friday, October 21, 2016. ECF Nos. 1, 3, 4. Later that day,

---

[3]      Consistent with the Court's scheduling order (ECF No.
8), ASI omitted from its Proposed Findings of Fact and
Conclusions of Law its claims "relating to Otsuka's unauthorized
disclosure of 'ASI's Confidential Information' to Genpact and
the possible use of 'ASI's Confidential Information' in Otsuka's
replacement software configured/customized by Genpact." Pl.'s
Proposed Findings of Fact at 1 n.1, ECF No. 39.

the Court held an emergency hearing on ASI's motion for a TRO.
See ECF No. 7. Following the emergency hearing, the Court
entered an order denying ASI's motion for a TRO and scheduling a
status and scheduling conference for October 25, 2016, ECF No.
6, and following this conference, the Court entered a scheduling
order, ECF No. 8. This order scheduled a hearing on Plaintiff's
motion for a preliminary injunction for February 8, 2017, and
limited discovery during the interim period to "the issue of the
continuing use or deletion of Plaintiff's software and
confidential information, as discussed on the record at the
October 25, 2016 hearing."[4] Id.

On November 14, 2016, Defendant filed an answer and
counterclaim to Plaintiff's complaint. ECF No. 14. On the same
day, Defendant also filed a memorandum of law in opposition to
Plaintiff's motion for a TRO and preliminary injunction. ECF No.
15.

---

[4]        Upon consultation with the parties at the status
conference held on October 25, 2016, the Court narrowed the
issue for the preliminary injunction hearing to whether
Defendant was continuing to use Plaintiff's software. See TRO
Hr'g Tr. at 18:14-18, Oct. 21, 2016, ECF No. 18 (explaining that
"to the extent that that transfer of technology is occurring,
certainly money damages both on behalf of the defendant and
potentially this new software operator who has been contracted
by the defendant[] would have to answer for it"); see also
Status Conf. Tr. at 22:24-23:3, Oct. 25, 2016, ECF No. 19
(reiterating that discovery should be "limited to the assertion
that the software was deleted," because "the issue is was it
deleted, and if so, was it in whole or in part?").

On January 9, 2017, Plaintiff filed a motion to compel interrogatory answers and production of documents from Defendant. ECF No. 26. The same day, Defendant filed a "first" motion to compel discovery from plaintiff. ECF No. 27. On January 19, 2017, Plaintiff filed a response to Defendant's discovery motion, ECF No. 30, and on January 20, 2017, Defendant filed a response to Plaintiff's discovery motion and cross-motion to compel, ECF No. 31.

On January 23, 2017, following a telephone conference on the parties' cross-motions regarding discovery, the Court entered an order denying without prejudice Plaintiff's motion and Defendant's cross-motion to compel, and granting in part and denying in part Defendant's "first" motion to compel. ECF No. 37. On January 31, 2017, both parties filed their respective Proposed Findings of Fact and Conclusions of Law for the preliminary injunction hearing scheduled for February 8, 2017. ECF Nos. 39, 40, 43. Over the next few days, the parties submitted several letter statements and responses regarding the appearances of certain witnesses at the preliminary injunction hearing. ECF Nos. 45, 46, 47, 48.

On February 7, 2017, the Court held a telephone conference on the record with counsel for both parties to discuss, inter alia, the issues raised in their briefing and letter statements. During this conference, the Court heard

arguments from both sides and obtained proffers as to what
evidence each party intended to present at the preliminary
injunction hearing scheduled for the next day.[5] Following the
telephone conference, the Court continued the preliminary
injunction hearing for one week. ECF No. 49.

## III. PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

### A.    Legal Standard

Federal Rule of Civil Procedure 65 empowers courts to
grant preliminary injunctions to enjoin harmful conduct. See
Fed. R. Civ. P. 65(a). The Third Circuit has observed that four
factors govern a district court's decision whether to issue a
preliminary injunction:

> (1) whether the movant has shown a reasonable
> probability of success on the merits; (2) whether the
> movant will be irreparably injured by denial of the
> relief; (3) whether granting preliminary relief will
> result in even greater harm to the nonmoving party;
> and (4) whether granting the preliminary relief will
> be in the public interest.

Allegheny Energy, Inc. v. DQE, Inc., 171 F.3d 153, 158 (3d Cir.
1999) (quoting ACLU v. Black Horse Pike Reg'l Bd. of Educ., 84
F.3d 1471, 1477 n.2 (3d Cir. 1996) (en banc)).

---

[5]      ASI planned to proffer testimony regarding (1) the
high value of its product, and (2) its contention that Otsuka
still possesses certain items related to ASI's software,
including installation packages, backup tapes, and hard-copy
documentation. For reasons explained more fully below, the Court
finds that none of this testimony relates to any matter in
dispute.

The Supreme Court has characterized injunctive relief as "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). "The burden lies with the plaintiff to establish every element in its favor," P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC, 428 F.3d 504, 508 (3d Cir. 2005), and, "[a]bsent a showing of irreparable harm, a plaintiff is not entitled to injunctive relief, even if the other three elements are found," Ferring Pharm., Inc. v. Watson Pharm., Inc., 765 F.3d 205, 219 (3d Cir. 2014).

A preliminary injunction is not appropriate if damages would be an adequate remedy. See Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp., 847 F.2d 100, 102 (3d Cir. 1988). Furthermore, "[e]stablishing a risk of irreparable harm is not enough" to warrant the issuance of a preliminary injunction. ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir. 1987); see also Cont'l Grp., Inc. v. Amoco Chem. Corp., 614 F.2d 351, 358–59 (3d Cir. 1980) ("Risk of harm if information is inadvertently disclosed . . . is not sufficient to satisfy the standard for granting a preliminary injunction. There must be an imminent threat of the allegedly harmful disclosure." (footnote omitted)). Instead, "[a] plaintiff has the burden of proving a 'clear showing of immediate irreparable injury.'" ECRI, 809 F.2d

10

at 226 (quoting Cont'l Grp., Inc., 614 F.2d at 359). "The 'requisite feared injury or harm must be irreparable--not merely serious or substantial,' and it 'must be of a peculiar nature, so that compensation in money cannot atone for it.'" Id. (quoting Glasco v. Hills, 558 F.2d 179, 181 (3d Cir. 1977)). Additionally, "where the relief ordered by the preliminary injunction is mandatory and will alter the status quo, the party seeking the injunction must meet a higher standard of showing irreparable harm in the absence of an injunction." Bennington Foods LLC v. St. Croix Renaissance, Grp., LLP, 528 F.3d 176, 179 (3d Cir. 2008).

Under certain circumstances, a preliminary injunction may be appropriate in a case involving a claim for breach of contract.[6] See, e.g., Chicago Title Ins. Co. v. Lexington & Concord Search and Abstract, LLC, 513 F. Supp. 2d 304, 313-14 (E.D. Pa. 2007) (granting motion for preliminary injunction based in part on claim for breach of contract); Darius Int'l,

---

[6]    Here, ASI seeks a preliminary injunction based only on Otsuka's alleged "breaches of the Agreement, i.e., retaining ASI's Confidential Information and failing to unambiguously certify the deletion of ASI's Confidential Information." Pl.'s Mem. of Law Supporting Proposed Findings of Fact and Conclusions of Law at 14 (hereinafter "Pl.'s Mem."), ECF No. 40; see also id. (stating that although the complaint "also contains claims for violations of Pennsylvania's Uniform Trade Secrets Act and Federal Defend Trade Secrets Act, this Court does not need to reach these issues in the context of ASI's request for a preliminary injunction." (emphasis added)). Accordingly, the Court does not consider whether any other legal basis might justify granting ASI's motion.

Inc. v. Young, No. 05-6184, 2006 WL 1071655, at *20-21 (E.D. Pa. Apr. 20, 2006) (granting motion for preliminary injunction on claims for breach of contract and unfair competition). "When a preliminary injunction is sought based on a breach of contract, irreparable injury may be found in two situations":

> (1) where the subject matter of the contract is of such a special nature [or] of peculiar value that damages would be inadequate; or (2) where because of some special and practical features of the contract, it is impossible to ascertain the legal measure of loss so that money damages are impracticable.

Home Line Furniture Indus., Inc. v. Banner Retail Mktg., LLC, 630 F. Supp. 2d 527, 540 (E.D. Pa. 2009) (quoting ECRI, 809 F.2d at 226). "[A] plaintiff in a breach of contract case cannot convert monetary harm into irreparable harm simply by claiming that the breach of contract has prevented it from performing contracts with others and that this subsequent failure to perform will harm the plaintiff's reputation." Bennington Foods LLC, 528 F.3d at 178-79.

Rule 65(a) "does not always require a live hearing, and courts sometimes rule based on the parties' paper submissions, such as when the issues are strictly legal or the facts are not in dispute." Fed. R. Civ. P. 65, practice commentary; see also Bradley v. Pittsburgh Bd. of Educ., 910 F.2d 1172, 1175 (3d Cir. 1990) ("[Rule 65(a)] does not make a hearing a prerequisite for ruling on a preliminary

injunction."). Within the Third Circuit, a court may decide a
motion for a preliminary injunction on the papers alone "[o]nly
when the facts are not in dispute, or when the adverse party has
waived its right to a hearing." Prof'l Plan Exam'rs of New
Jersey, Inc. v. Lefante, 750 F.2d 282, 288 (3d Cir. 1984)
(citations omitted); see also Williams v. Curtiss-Wright Corp.,
681 F.2d 161, 163 (3d Cir. 1982) ("It has long been recognized
that a preliminary injunction may issue on the basis of
affidavits and other written evidence, without a hearing, if the
evidence submitted by both sides does not leave unresolved any
relevant factual issue."). "[A] district court is not obliged to
hold a hearing when the movant has not presented a colorable
factual basis to support the claim on the merits or the
contention of irreparable harm." Bradley, 910 F.2d at 1175.

    B.   Discussion

        The parties do not dispute the relevant facts or the
applicable law. Instead, the crux of the parties' disagreement
is whether Otsuka breached the Agreement by failing to return or
destroy certain items it received from ASI along with ASI's
software, including installation packages, backup takes, and
hard-copy documentation.

        ASI argues that "[t]he Agreement clearly provides that
upon termination each party shall promptly deliver to the other

13

party or destroy and certify the destruction of the other party's Confidential Information." Pl.'s Mem. at 14, ECF No. 40. ASI further claims that the Agreement states "unambiguously" that "[n]either party may retain copies of any such [confidential] items without the other party's prior written consent." Id. (quoting Agreement § 10(e)).

For its part, Otsuka claims that it "has complied with the operative provision of the parties' [A]greement, which only required [Otsuka] to stop 'using and accessing' INSIGHTS, not to delete it." Def.'s Conclusions of Law at 36, ECF No. 43. INSIGHTS, according to Otsuka, "is a software program that presents [Otsuka's] business data to [Otsuka's] promotional team." Def.'s Findings of Fact ¶ 17, ECF No. 43. Otuska characterizes INSIGHTS as "merely a manner of organizing [Otsuka's] own data and presenting to [Otsuka's] field promotional team." Id. Accordingly, Otsuka maintains that "[a]fter ASI shut down [Otsuka's] access to its own data [on September 6, 2016], the INSIGHTS program was useless." Id. ¶ 41. Otsuka further maintains that, following ASI's removal of Otsuka's access to INSIGHTS, Otsuka continued for several weeks to "track removal of INSIGHTS on a daily basis from a few devices that either were not actively used, had not been powered on, or were not properly reporting back the deletion of INSIGHTS," until it finally confirmed, prior to the October 25,

2016, status conference before this Court, that ASI's product had been deleted from all of these devices. Id. ¶ 52.

ASI no longer disputes that Otsuka has ceased using its product. See Pl.'s Resp. Opp. Mot. Sanctions at 5, ECF No. 44 ("ASI will not be seeking an injunction to prohibit Otsuka's continued use of ASI's confidential software at the February 8 hearing." (citing generally Pl.'s Mem., ECF No. 40)). Instead, ASI continues to press its claim that the Agreement "requires Otsuka to (1) delete ASI's installation packages (containing ASI's software), (2) delete ASI's Confidential Information from its backup systems, and (3) delete ASI's documentation concerning its confidential software and 'Subscription Services,' among other things." Pl.'s Resp. Ltr. Statement at 1, Feb. 6, 2017, ECF No. 47. Otsuka does not deny that it continues to possess these items, but it argues that it is not required by the terms of the Agreement to delete them. See Def.'s Conclusions of Law ¶¶ 32-37.[7]

---

[7] Otsuka argues further that complete destruction of these files is virtually impossible. See Def.'s Proposed Conclusions of Law ¶ 95 ("[ASI] continues to ask the Court to issue an injunction that will require [Otsuka] to search every inch of every place it does business for unknown pieces of paper that mention ASI and to destroy backup tapes that it needs for litigation hold and catastrophic recovery purposes."). Counsel for Otsuka argued during the February 7, 2017, telephone conference that (1) deletion of the backup files is nearly impossible because these files are "not accessible" and deletion would necessitate destruction of the "entire backup," not merely the files related to Otsuka's product; and (2) ASI has rejected

In light of this development, the Court finds that no factual dispute remains with regard to Plaintiff's pending motion for a preliminary injunction, and the Court therefore declines to hold a hearing on this motion. See Williams, 681 F.2d at 163 ("It has long been recognized that a preliminary injunction may issue on the basis of affidavits and other written evidence, without a hearing, if the evidence submitted by both sides does not leave unresolved any relevant factual issue."). The parties do not dispute that Otsuka should no longer be using or disclosing ASI's software, nor do they dispute that Otsuka is in fact not using or disclosing ASI's software at present. Rather, what remains in dispute at this time is only whether Otsuka's continuing possession of certain items--namely, installation packages, backup tapes, and hard-copy documentation--poses any risk that ASI's software will be used or disclosed in the future, in violation of the parties' Agreement. Phrased slightly differently, the parties dispute only whether the undisputed facts constitute breach of contract on the part of Otsuka.

In considering a motion for a preliminary injunction, a court typically assesses the plaintiff's likelihood of success on the merits of his or her underlying claim. Here, it appears

---

Otsuka's repeated offers to delete the installation packages, which Otsuka is maintaining at this time only for purposes of the litigation hold.

that the parties may have two different and competing interpretations of the relevant portions of the Agreement. Regardless, the Court need not consider this issue at this time, because the Court finds that ASI has failed to clearly demonstrate irreparable injury, and this alone precludes the issuance of a preliminary injunction. See Ferring Pharm., Inc., 765 F.3d at 219 ("Absent a showing of irreparable harm, a plaintiff is not entitled to injunctive relief, even if the other three elements are found."); see also Hoxworth v. Blinder, Robinson & Co., Inc., 903 F.2d 186, 197-98 (3d Cir. 1990) (placing particular emphasis on "likelihood of success on the merits" and "irreparable harm" as necessary "prerequisites" to obtaining a preliminary injunction).

In support of its claim of irreparable harm, ASI argues only that its confidential information "constitutes its valuable trade secrets" and that "[t]he value of these trade secrets is demonstrated by the harm that would befall ASI if they were to be disseminated." Pl.'s Mem. at 18-19; see also Pl.'s Proposed Findings of Fact at ¶ 9, ECF No. 39 ("If ASI's confidential software were provided to other software developers or those knowledgeable about computer programming or information technology issues, those persons could ascertain ASI's trade secrets, something that would cause immediate and irreparable harm to ASI's business."). Though ASI has detailed the extensive

efforts it undertakes to protect its confidential information, ASI has failed to identify with specificity any of the trade secrets allegedly at issue. Moreover, ASI has failed to explain exactly what makes its confidential information--in particular, the installation packages, backup tapes, and hard-copy documentation currently at issue--so "special" or "peculiar" as to warrant injunctive relief at this time. Home Line Furniture, 630 F. Supp. 2d at 540 (quoting ECRI, 809 F.2d at 226).

Nor has ASI established why damages would be inadequate to compensate ASI for any harm that might come of Otsuka's continuing possession of the items in question. See id. Even assuming that ASI might argue that it could be difficult to quantify in monetary terms the value of the trade secrets contained in these items, "[a]n inability to precisely measure financial harm does not make that harm irreparable or immeasurable." Acierno v. New Castle Cty., 40 F.3d 645, 655 (3d Cir. 1994). Similarly, any potential argument that ASI's business with other companies might be adversely affected is insufficient to establish irreparable injury for purposes of obtaining a preliminary injunction. See Bennington Foods LLC, 528 F.3d at 178-79 ("[A] plaintiff in a breach of contract case cannot convert monetary harm into irreparable harm simply by claiming that the breach of contract has prevented it from

performing contracts with others and that this subsequent failure to perform will harm the plaintiff's reputation.").

Moreover, even if the Court were to find that ASI has "establish[ed] a risk of irreparable harm"--presumably by finding that Defendant's continuing possession of the items in question could expose ASI's confidential information to future use or disclosure--ASI has not shown (and, indeed, no longer argues) that any use or disclosure is "immediate," or even that there is "an imminent threat of the allegedly harmful disclosure." See ECRI, 809 F.2d at 226; Cont'l Grp., Inc., 614 F.2d at 358-59. The testimony that ASI planned to offer at a hearing related only to the value of its product and Otsuka's continuing possession of its installation packages, backup tapes, and hard-copy documentation. See supra 9 n.5. Even accepting all of this as true,[8] ASI has not clearly shown that it will suffer irreparable injury absent a preliminary injunction.

**IV.  CONCLUSION**

For the foregoing reasons, the Court will deny Plaintiff's motion for a preliminary injunction. An appropriate order follows.

---

[8]     Otsuka does not dispute that ASI's product is valuable, nor does it dispute its continuing possession of these items.